U.S. DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

---

Bohdan J. Zelechiwsky and
Lisa A. Zelechiwsky,

Plaintiffs,

                v.

Trooper Ashley Davis,

Defendant.

---

    :
    :
    :   Civ. Dkt. 1:22-cv-04994-CPO-AMD
    :
    :
    :
    :
    :
    :

---

**DEFENDANT, TROOPER ASHLEY DAVIS'**
**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT**

---

KENT & McBRIDE, P.C.
1040 KINGS HIGHWAY NORTH
SUITE 600
CHERRY HILL, NJ 08034
(856) 667-3113
Attorneys for Defendant, Trooper Ashely Davis


Diana R. Brocco, Esquire
On The Brief

## SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonably jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude the Court from granting a motion for summary judgment. *See id.*

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate an absence of a genuine issue of material fact. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A party asserting that fact [is not] genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents . . . affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to

38

interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *See Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." Messa v. Omaha Prop. & Cas. Ins. Co., 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting Anderson, 477 U.S. at 249-50). "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See* Anderson, 477 U.S. at 250-51.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255). Again, the Court's role in deciding a motion for summary judgment is simply "to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. Ultimately, no genuine issue of material fact exists if the nonmoving party "fails to make a showing

sufficient to establish the existence of an element essential to that party's case." Celotex, 477 U.S. at 322.

Finally, where, as here, there is video footage related to the claims, the Court will not draw inferences that are "blatantly" inconsistent with the video evidence. *See* Scott v. Harris, 550 U.S. 372, 380-81 (2007) ("the facts [should be viewed] in the light depicted by the videotape"); *accord* Castellani v. City of Atl. City, No. 13-5858, 2017 U.S. Dist. LEXIS 113599, at *14-15 (D.N.J. July 21, 2017). Video evidence does not blatantly contradict a non-movant's account for summary judgment purposes when there is an obstruction that block[s] the view of the camera" so that the video does not show what happened during . . . crucial moments." McDowell v. Sheerer, 374 F. App'x 288, 292-93 (3d Cir. 2010).

Here, while some of the video footage is blocked by Trooper Davis' whistle, the crucial moments of the stop, the field sobriety tests, the handcuffing of Plaintiff Bodhan Zlechiwsky, and search of the vehicle are all visible and largely audible. Therefore, any notion that the reasonableness of the stop, and subsequent actions of Trooper Davis are not captured sufficiently for this Honorable Court to decide on summary judgment at this stage of the litigation is not accurate.

Moreover, any notion that that this matter cannot be decided on summary judgment due to the fact that the dash cam does not show Plaintiffs' vehicle improperly changing lanes, with no use of

signal or weaving is dispelled by the fact that Trooper Davis made observations that Plaintiff Bodhan was making unsafe lane changes and failed to use his traffic signal are enough to dispose of this case based the record as discussed more in depth _infra_.

I. **COUNTS I-IV OF PLAINTIFFS' COMPLAINT FAIL AS A MATTER OF LAW BECAUSE DEFENDANTS DID NOT VIOLATE THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION.**

   A. **Plaintiff has no valid Fourth Amendment Claim as it is not actionable under Section 1983 and the New Jersey Civil Rights Act.**

Title 42 U.S.C. § 1983 (hereinafter "Section 1983") does not create substantive rights but "only remedies deprivations of rights established elsewhere in the Constitution[]." Kneipp by Cusack v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1966). Similarly, the New Jersey Civil Rights Act (hereinafter "NJCRA") was enacted in 2004 as an analogue to Section 1983 to provide New Jersey citizens with state remedies without creating new substantive rights. _See_ Perez v. Zagami_, LLC_, 94 A.3d 869, 875 (N.J. 2014) (citations omitted). _See also_ Harz v. Borough of Spring Lake, 191 A.3d 547, 554 (N.J. 2018) (NJCRA provides remedy for violation of substantive rights in New Jersey State Constitution). Therefore, a private cause of action under NJCRA correlates to the Section 1983 federal cause of action.[1] _See_ Perez, 94 A.3d at 877. "The

---

[1] Section 10:6-2(c) of the New Jersey Civil Rights Act (hereinafter "NJCRA") is nearly identical to Section 1983, with two distinct differences. First, the NJCRA "protects against the deprivation of and interference with '_substantive_ rights, privileges or immunities secured by the Constitution or laws of this State,'" while Section 1983 protects against "the deprivation of _any_ rights."

interpretation given to parallel provisions of [Section 1983] may provide guidance in construing" the NJCRA. Harris v. City of Newark, 271 A.3d 1250, 1257 (N.J. 2022) (quoting Tumpson, 95 A.3d at 223). In fact, federal jurisprudence has been helpful to New Jersey state courts in formulating a standard for identifying a substantive right under the NJCRA. *See id.*

In the case at bar, specifically, in Counts I through IV of their Complaint, Plaintiffs claim violations of the Fourth Amendment of the United States Constitution. (A true and correct copy of Plaintiff's Complaint is attached hereto as **Exhibit "B"**).

The Fourth Amendment establishes the following:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 7 of the New Jersey State Constitution is effectively identical. *See* State v. Witt, 126 A.3d 850, 857 (N.J. 2015). "Probable cause is more than bare suspicion but less than legal evidence necessary to convict. It has been defined by this Court as a 'well-grounded suspicion' that a crime has been or is

---

Tumpson v. Farina, 95 A.3d 210, 224 (N.J. 2014) (emphasis in original) (citations omitted). Second, as to the NJCRA, the New Jersey Supreme Court had to determine whether the legislature intended for Section 10:6-2(c) to provide remedies "in addition to those in previously enacted statutes or the common law." *Id.* In contrast, as to Section 1983, the United States Supreme Court had to determine whether the statute enacted after 1871 (the date of Section 1983's enactment) foreclosed Section 1983's available remedies. *See id.* (citations omitted).

being committed." State v. Alston, 440 A.2d 1311, 1321 (N.J. 1981) (internal citations omitted). In New Jersey, this protection extends to people's "effects" as well. State v. Alston, 440 A.2d 1311, 1319 (N.J. 1981). Analyzing a violation of the Fourth Amendment depends on the type of violation alleged. As such, each violation alleged by Plaintiffs will be addressed in turn.

## II. **Count I of Plaintiffs' Complaint Unlawful Seizure/False Arrest, against Trooper Davis and John Doe fails as a matter of law because Plaintiffs were not unlawfully seized.**

### A. **Plaintiffs' traffic stop was not an unlawful seizure.**

Count I of Plaintiff's Complaint as to Unlawful Seizure must be dismissed as a matter of law since reasonable suspicion existed for Trooper Davis to stop Plaintiff Bodhan Zelechiwsky's vehicle. "A traffic stop, however brief, constitutes a seizure under the Fourth Amendment and is subject to review for reasonableness." United States v. Hunter, 88 F.4th 221, 224 (3d Cir. 2023) [citing Whren v. United States, 517 U.S. 806, 809-10 (1996)]. Courts must view reasonableness from an objective lens, not through a subjective lens regarding the officer involved. United States v. Hunter, 88 F.4th 221, 224 (3d Cir. 2023) (internal citations omitted). A traffic stop is only reasonable where it is "justified at its inception and the officer's actions during the stop [are] reasonably related to 'the mission of the stop itself.'" United States v. Hunter, 88 F.4th 221, 224 (3d Cir. 2023) (quoting

Rodriguez v. United States, 575 U.S. 348, 356 (2015)). In other words, the traffic stop is reasonable if the police officer has probable cause to believe a traffic violation occurred. United States v. Hurtt, 31 F.4th 152, 158 (3d Cir. 2022) (emphasis added). The traffic stop's "mission," as here, includes issuing a traffic ticket, checking the driver's license, and inspecting registration and insurance. United States v. Hunter, 88 F.4th 221, 224 (3d Cir. 2023) [citing Rodriguez v. United States, 575 U.S. 348, 354-55 (2015)]. Officers may also complete "certain negligibly burdensome precautions" to complete the mission safely. United States v. Hunter, 88 F.4th 221, 224 (3d Cir. 2023) [citing Rodriguez v. United States, 575 U.S. 348, 356 (2015)].[2] In completing the on-mission tasks, an officer must be reasonably diligent. United States v. Hurtt, 31 F.4th 152, 160 (3d Cir. 2022) (internal citations omitted). "[T]he best indication of whether an officer has been reasonably diligent is by 'noting what the officer actually did and how he or she did it.'" United States v. Hurtt, 31 F.4th 152, 160 (3d Cir. 2022) (internal citations omitted).

However, subsequent investigation or "off-mission detours that do not address the basis for the stop or legitimate safety

---

[2] Officer safety is a "legitimate and weighty" interest that allows for additional intrusions during the stop. United States v. Hurtt, 31 F.4th 152, 160 (3d Cir. 2022) (internal citations omitted). In fact, the United States Supreme Court "has afforded 'police officers unbridled discretion to order drivers out of their cars during traffic stops in the name of officer safety.'" United States v. Hunter, 88 F.4th 221, 226 (3d Cir. 2023) (internal citations omitted).

concerns, such as a dog-sniff or extensive criminal history questioning, violate the Fourth Amendment when performed without reasonable suspicion." United States v. Hunter, 88 F.4th 221, 224 (3d Cir. 2023). *See also* United States v. Hurtt, 31 F.4th 152, 159 (3d Cir. 2022). The United States Supreme Court has developed a test for determining whether off-mission detours unlawfully extend the time for a search: "'a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures.' Thus, 'a seizure justified only by a police-observed traffic violation becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission.'" United States v. Hurtt, 31 F.4th 152, 159 (3d Cir. 2022) (internal citations omitted). In short, the inquiry is two-pronged:

> "[W]e must first determine if and when the stop was measurably extended; and second, after determining when the stop was extended – the Rodriguez moment, so to speak – we can assess whether the facts available at that time were sufficient to establish reasonable suspicion."

> After the Rodriguez moment, "nothing later in the stop can inform our reasonable suspicion analysis." In short, we ask whether the mission of the traffic stop was continuously carried out before the discovery of evidence giving rise to a reasonable suspicion of criminality. Any break in that mission taints the stop because it is the result of an unreasonable delay."

United States v. Hurtt, 31 F.4th 152, 159 (3d Cir. 2022) (internal citations omitted).

In the case at bar, Trooper Davis was and is at present, a duly sworn member of the New Jersey State Police. She made a lawful stop based upon reasonable suspicion and with the concern that Plaintiff Bodhan Zelechiwsky was not operating his vehicle safely and was a danger to the public. Further, as is shown in her body worn camera, all actions taken by Trooper Davis were performed with the mission of the traffic stop at the forefront of all of her actions which followed the stop. There was no break in the mission of Trooper Davis as are evinced by her actions which are recorded on her body worn camera.

Moreover, while not captured on her dash cam, Trooper Davis testified under oath that she made observations of the Plaintiffs' vehicle weaving, failing to maintain lane, and also, failure to activate a turn signal. All of these unsafe traffic violations occurred on a highway. (See a true and correct copy of Trooper Davis' Deposition Transcript is attached hereto as **Exhibit "F," 39:4-13).** In that time, Trooper Davis observed Plaintiffs' vehicle fail to maintain its lane of travel on <u>multiple occasions</u>. (A true and correct copy of Trooper Davis' Deposition Transcript is attached hereto as **Exhibit "F," 39:4-13).**

Trooper Davis also observed Plaintiffs' vehicle fail to employ the turn signal as the vehicle moved into the right lane. (See a true and correct copy of Trooper Davis' Deposition Transcript is attached hereto as **Exhibit "F," 40:6-18).**

46

Trooper Davis found these failures to be endangering other vehicles. (See a true and correct copy of Trooper Davis' Deposition Transcript is attached hereto as **Exhibit "F," 41:8-9**).

Thereafter, Trooper Davis took enforcement actions and pulled the pickup truck over to conduct a motor vehicle stop.  It is undisputed that leaving marked lanes and changing lanes without signaling are motor vehicle violations of the New Jersey Motor Vehicle Code.

There is nothing in the record to suggest that the traffic stop was arbitrarily initiated based upon Trooper Davis' observations of Plaintiff Bohdan Zelechiwsky's operation of his vehicle on Route 55.  If she did not stop him for such violations, she would not be performing her duties as a State Trooper. Plaintiffs' position throughout this litigation has been that there was a police "blitz", yet there I no indication in the record that a police "blitz" was being conducted on the night of the stop. As Plaintiff would have it, Trooper Davis decided to stop Plaintiffs vehicle for no good reason, and in doing so, waste her time when she could be patrolling Route 55 for other motor vehicle offenders.

Moreover, there is nothing to suggest in the footage of Trooper Davis' Body Worn Camera that she deviated from the original reason, or mission as to why she pulled over Plaintiffs.  That is because she suspected that Plaintiff Bodhan Zelechiwsky was

47

Driving While Under the Influence based upon his operation of his vehicle.

Further, the record shows that there are several potential reasons why Plaintiff Bohdan Zelechiwsky could have been distracted which contributed to his failure to maintain his lane, and failure to activate his turn signal when changing lanes.  These reasons include Driving While Under the Influence of alcohol, or drugs, whether they are legal or illegal.   In fact, Plaintiff testified that he did not know whether he had made any lane changes prior to getting pulled over.   (A true and correct copy of Plaintiff Bodhan Zelechiwsky's Deposition Transcript is attached hereto as **Exhibit "C," 107:6-8**).   This testimony supports Trooper Davis' observations and does not dispel that lane changes were made by Plaintiff Bodhan Zelechiwsky prior to the subject stop.

Further, Plaintiff Lisa Zelechiwsky stated to Trooper Gallagher that her husband's driving "isn't the greatest."  (See a true and correct copy of Trooper Gallagher's Bodycam Footage is attached hereto as **Exhibit "H," 21:49:30**). This supports the notion that Trooper Davis' stop was based upon reasonable suspicion and further supports that Plaintiff Bodhan was operating his vehicle in a unsafe manner.

Plaintiff Bohdan Zelechiwsky also used "Waze" on a cell phone for navigating the drive, even though he had travelled that route home many times previously. (A true and correct copy of Plaintiff

48

Bodhan Zelechiwsky's Deposition Transcript is attached hereto as **Exhibit "C, "96:10-11**).

Further, Plaintiff's cell phone was mounted on the air conditioning vent. (A true and correct copy of Plaintiff Bodhan Zelechiwsky's Deposition Transcript is attached hereto as **Exhibit "C," 96:16-23**). Also, the cell phone was not connected to the vehicle via Bluetooth. (A true and correct copy of Plaintiff Bodhan Zelechiwsky's Deposition Transcript is attached hereto as **Exhibit "C," 106:19-23**). Plaintiffs' large dog was also in the back floor of the Plaintiffs' truck. (A true and correct copy of Plaintiff Bodhan Zelechiwsky's Deposition Transcript is attached hereto as **Exhibit "C," 97:6-11**). Plaintiffs also mounted their bikes on the back of their vehicle. (A true and correct copy of Plaintiff Bodhan Zelechiwsky's Deposition Transcript is attached hereto as **Exhibit "C," 113:18-21;** see also a true and correct copy of Trooper Davis' Deposition Transcript is attached hereto as **Exhibit "F," 96:15-17**).

While Plaintiff Bodhan Zelechiwsky denies that any of these factors contributed to erratic driving, these factors, coupled with the late hour and his long day entertaining friends, could have contributed to Plaintiff's failure to maintain lane and failure to activate his turn signal. Nevertheless, Trooper Davis' decision to pull Plaintiffs over, when looking at the totality of circumstances was based upon reasonable suspicion and therefore,

49

was a proper traffic stop.  The facts further show that her actions were reasonably related to 'the mission of the stop itself' and that she did not conduct any police matters which were unrelated to the initial stop.  Specifically, once the stop was effectuated, Trooper Davis clearly stated the reason why she stopped the vehicle after asking for license and registration and insurance.  Her body worn camera shows that at no time was she rude, offensive, or disrespectful. She then asked them Trooper Davis approached the passenger's side of Plaintiffs' vehicle.  Trooper Davis observed Plaintiff Lisa Zelechiwsky in the passenger's seat and Plaintiff Bodhan Zelechiwsky in the driver's seat. (See a true and correct copy of Trooper Davis' Deposition Transcript is attached hereto as **Exhibit "F," 45:14-17**).

When she approached the passenger's side of Plaintiffs' vehicle, Trooper Davis stated:  "The reason why I stopped you is because you  failed to maintain your lane, you were all over the road, and you failed to use your signal and were passing three lanes."  See a true and correct copy of Trooper Davis' Bodycam Footage is attached hereto as **Exhibit "G," 21:36:50)**.  She then asked them for his driver's license. She then asked them where they were coming from.  She then asked Plaintiff if he had anything to drink. (See a true and correct copy of Trooper Davis' Bodycam Footage is attached hereto as **Exhibit "G," 21:37:24)**.

Trooper Davis observed Plaintiff Bodhan Zelechiwsky's movements to be slow. (A true and correct copy of Trooper Davis' Deposition Transcript is attached hereto as **Exhibit "F," 46:20-24**). Trooper Davis observed Plaintiff Bodhan Zelechiwsky's eyes to be bloodshot and glassy. (A true and correct copy of Trooper Davis' Deposition Transcript is attached hereto as **Exhibit "F," 46:20-24; 98:3-6**). Trooper Davis approached Plaintiffs' vehicle without wearing a mask. (A true and correct copy of Plaintiff Lisa Zelechiwsky's Deposition Transcript is attached hereto as **Exhibit "E," 45:11-12**).

Trooper Davis asked Plaintiff Bodhan Zelechiwsky to exit his vehicle. (A true and correct copy of Trooper Davis' Deposition Transcript is attached hereto as **Exhibit "F," 50:12-14; see also** a true and correct copy of Trooper Davis' Bodycam Footage is attached hereto as **Exhibit "G," 1:14**). All of the actions of Trooper Davis were related to her initial traffic stop and that was to test Plaintiff for Driving while Under the Influence between field sobriety test, which as discussed infra, show that Plaintiff admittedly did not perform well on the tests.

51

**B.    Plaintiff Bohdan Zelechiwsky was not falsely arrested.**

Count I of Plaintiff's Complaint as to False Arrest should be dismissed as a matter of law since probable cause existed for Trooper Davis to arrest Plaintiff Bohdan Zelechiwsky after he failed the field sobriety tests administered.

"A claim for false arrest 'is grounded in the Fourth Amendment's guarantee against unreasonable seizures.'" Fleming v. Black, No. 1:21-CV-0349, 2024 LEXIS 37329, at *10 (M.D. Pa. 2024) [quoting Kokinda v. Breiner, 557 F. Supp. 2d 581, 592 (M.D. Pa. 2008)]. The plaintiff must show that the police officer lacked probable cause for the arrest. Fleming v. Black, No. 1:21-CV-0349, 2024 LEXIS 37329, at *10 (M.D. Pa. 2024) (citing Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988)). In the context of driving under the influence, probable cause is determined by a totality of the circumstances. *Fleming v. Black*, No. 1:21-CV-0349, 2024 LEXIS 37329, at *10 (M.D. Pa. 2024) [quoting Commonw. v. Williams, 941 A.2d 14, 27 (Pa. Super. 2008)].

A finding of probable cause is a complete defense to claims under the Fourth Amendment for false arrest and for malicious prosecution. *See* Goodwin v. Conway, 836 F.3d 321, 327 (3d Cir. 2016); Nieves v. Bartlett, 139 S. Ct. 1715, 1722-23 (2019); Paredes v. Egg Harbor Twp. Bd. of Educ., No. 15-2929 (JBS/JS), 2018 WL 3930087, at *11 (D.N.J. Aug. 16, 2018 (false arrest). *See also*

Dir. Gen. of Railroads v. Kastenbaum, 263 U.S. 25, 27 (1923); [Manuel v. City of Joliet, 137 S. Ct. 911, 917-18 (2017)].

Probable cause exists if "'the facts and circumstances within [the defendant's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that the plaintiff had violated the law." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 789 (3d Cir. 2000) (quoting Hunter v. Bryant, 502 U.S. 224, 228 (1991)). "Probable cause to arrest requires more than mere suspicion; **however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt**." Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995). (emphasis added). "[T]he relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the **degree of suspicion** that attaches to particular types of noncriminal acts." District Court of Columbia v. Wesby, 138 S. Ct. 577, 586 (2018) [quoting Illinois v. Gates, 462 U.S. 213, 244 n. 13 (1983)]. The inquiry requires viewing the totality of the circumstances available to arresting officers, rather than viewing each fact in isolation. Wesby, at 588.

Several cases within the Third Circuit have found probable cause under similar circumstances to those present here. *See, e.g.,* Fleming v. Black, No. 1:21-CV-0349, 2024 LEXIS 37329, at *11 (M.D. Pa. 2024) (finding probable cause despite breathalyzer results

under legal limit where Plaintiff demonstrated bloodshot watery eyes, swaying, and odor of alcohol on his breath).

Here, Plaintiff Bodhan Zelechiwsky's behavior and performance during the field sobriety tests show that Trooper Davis' decision to arrest him was reasonable and based upon his performance on the field sobriety tests.

Specifically, between the time Trooper Davis asked Plaintiff to step out of the car and when she performed the nystagmus test, Plaintiff did not have difficulty hearing or understanding Trooper Davis. Yet, Trooper Davis had to repeatedly ask that Plaintiff not to move his head during this test. (A true and correct copy of Plaintiff Bodhan Zelechiwsky's Deposition Transcript is attached hereto as **Exhibit "C," 120:3-9.** Given Plaintiff Bodhan Zelechiwsky's experience as a criminal defense attorney with driving under the influence offenses, he had a clear understanding of the nystagmus test. (A true and correct copy of Plaintiff Bodhan Zelechiwsky's Deposition Transcript is attached hereto as **Exhibit "C," 120:11-13**); see also a true and correct copy of Trooper Davis' Deposition Transcript is attached hereto as **Exhibit "F," 100:23-25; 101:1-3**).

Throughout the nystagmus test, Trooper Davis checked for equal eyesight, equal tracking of the eyes, and smooth pursuit of the eyes. (A true and correct copy of Trooper Davis' Deposition Transcript is attached hereto as **Exhibit "F," 101:22-25**).

Plaintiff Bodhan Zelechiwsky moved his head throughout the nystagmus test, despite Trooper Davis' instructions not to do so. (A true and correct copy of Trooper Davis' Deposition Transcript is attached hereto as **Exhibit "F," 52:4-12; 104:5-7**; see also a true and correct copy of Trooper Davis' Bodycam Footage attached hereto as **Exhibit "G" 21:38:53**).   In fact, Trooper Davis had to instruct Plaintiff Bodhan Zelechiwsky not to move his head during the test continuously. (A true and correct copy of Trooper Davis' Deposition Transcript is attached hereto as **Exhibit "F," 52:4-12**; See also a true and correct copy of Trooper Davis' Bodycam Footage attached hereto as **Exhibit "G," 21:38:53).**   Due to Plaintiff Bodhan Zelechiwsky's head movements, Trooper Davis could not observe his eyes correctly. (A true and correct copy of Trooper Davis' Deposition Transcript is attached hereto as **Exhibit "F," 54:12-13; 104:5-7).**   Plaintiff Bodhan Zelechiwsky's failure to follow directions during the field sobriety tests administered and Trooper Davis' observations during that time resulted in an automatic failure of the nystagmus test (A true and correct copy of Trooper Davis' Deposition Transcript is attached hereto as **Exhibit "F,"109:9-12**).

Trooper Davis thereafter requested that Plaintiff Bodhan Zelechiwsky to perform the walk and turn test in which he walked by placing his right heel in front of his left toe, and vice versa. (A true and correct copy of Plaintiff Bodhan Zelechiwsky's

Deposition Transcript is attached hereto as **Exhibit "F," 121:10-16**; see also a true and correct copy of Trooper Davis' Bodycam Footage attached hereto as **Exhibit "G," 1:14**).

Trooper Davis asked Plaintiff whether he had any injuries preventing him from performing the walk and turn test, to which Plaintiff responded: "Nothing here." (See a true and correct copy of Trooper Davis' Bodycam Footage attached hereto as **Exhibit "F", 21:39:43**).

It is undisputed that Plaintiff Bodhan Zelechiwsky understood Trooper Davis' instructions. (A true and correct copy of Plaintiff Bodhan Zelechiwsky's Deposition Transcript is attached hereto as **Exhibit "C," 121:25; 122:1-11**).  It is further undisputed that prior to Plaintiff performing the walk and turn test, that she demonstrated the test for Plaintiff before administering same. Trooper Davis explained the test, nine heel to toe tests and once get to nine, will use the other foot to turn around. She further explained to keep his hands at his side, count out loud and keep his eye on his foot.  She further explained that at no time during the test should he stop. (See a true and correct copy of Trooper Davis' Bodycam Footage attached hereto as **Exhibit "G", 21:40:04-56**)  Trooper Davis also offered to repeat the instructions which Plaintiff refused.  (See **Exhibit "G", 21:40:45**).

Plaintiff Bodhan Zelechiwsky did not ask Trooper Davis about her instructions. (A true and correct copy of Plaintiff Bodhan

Zelechiwsky's Deposition Transcript is attached hereto as **Exhibit "C," 122:17-20**).

It is undisputed that during the test, Plaintiff Bodhan Zelechiwsky did not count out loud, as instructed. (A true and correct copy of Trooper Davis' Deposition Transcript is attached hereto as **Exhibit "F," 123:4-9**; see also a true and correct copy of Trooper Davis' Bodycam Footage, **21:40:04, Exhibit "G"**). Trooper Davis also had to ask Plaintiff to take his hands out of his pockets for her safety and to conduct the test properly. (A true and correct copy of Trooper Davis' Deposition Transcript is attached hereto as **Exhibit "F," 109-110:24-25;1-6**).

Failure to count out loud is a sign of intoxication. (A true and correct copy of Trooper Davis' Deposition Transcript is attached hereto as **Exhibit "F," 112:10-16**).

Moreover, Plaintiff Bodhan Zelechiwsky did not keep his balance throughout the test. (A true and correct copy of Trooper Davis' Deposition Transcript is attached hereto as **Exhibit "F," 56:13-24**; see also a true and correct copy of Trooper Davis' Bodycam Footage, attached hereto as **Exhibit "G," 21:41:10**). Plaintiff Bodhan Zelechiwsky raised his hand during the test. (A true and correct copy of Trooper Davis' Deposition Transcript is attached hereto as **Exhibit "F," 59:3-6**; see also a  true and correct copy of Trooper Davis' Bodycam Footage, **21:40:56**, is attached hereto as **Exhibit "G"**).  Raising a hand is also a clue

57

for potential intoxication. (A true and correct copy of Trooper Davis' Deposition Transcript is attached hereto as **Exhibit "F," 61:21-24; 111:19-25; 112:1-6**).

Trooper Davis then instructed Plaintiff Bodhan Zelechiwsky to perform the one-leg stand test. (A true and correct copy of Plaintiff Bodhan Zelechiwsky's Deposition Transcript is attached hereto as **Exhibit "C," 123:18-25; 124:1;** see also a true and correct copy of Trooper Davis' Bodycam Footage, is attached hereto as **Exhibit "G," 21:41:38**).

It is undisputed that Trooper Davis explained the one-leg stand test in detail. Specifically, she stated: "You want to raise whatever foot you feel comfortable, six inches parallel to the ground and count one one thousand, two one thousand, three one thousand, four one thousand until she tells him to stop. While taking the test, hands must remain at his side, count out loud, and eyes must remain on that foot that is raised." She asked if he had any questions. Trooper Davis further asked if Plaintiff understood the test and whether she needed to repeat it. To which Plaintiff replied, "Nope". (See a true and correct copy of Trooper Davis' Bodycam Footage, **Exhibit "G," 21:41-42: 40-16).** Clearly, Plaintiff Bodhan Zelechiwsky understood Trooper Davis' instructions prior to him performing the one-leg stand test. (A true and correct copy of Plaintiff Bodhan Zelechiwsky's Deposition Transcript is attached hereto as **Exhibit "C," 123:18-21**).

Notwithstanding, it is undisputed that Plaintiff Bodhan Zelechiwsky lost his balance several times during the one-leg stand test. (A true and correct copy of Trooper Davis' Deposition Transcript is attached hereto as **Exhibit "F," 59:3-6**; see also see also a true and correct copy of Trooper Davis' Bodycam Footage, is attached hereto as **Exhibit "G", 21:42:27-56")**. It is undisputed that Plaintiff Bodhan Zelechiwsky was unsteady in performing the one-leg stand. (A true and correct copy of Plaintiff Bodhan Zelechiwsky's Deposition Transcript is attached hereto as **Exhibit "C," 126:17-24**); see also a true and correct copy of Trooper Davis' Bodycam Footage is attached hereto as **Exhibit "G", 21:42:27-56)**. Plaintiff Bodhan Zelechiwsky failed the one-leg stand test. (A true and correct copy of Trooper Davis' Deposition Transcript is attached hereto as **Exhibit "F," 115:20-25**).

After performing his field sobriety tests, Plaintiff Bodhan Zelechiwsky was handcuffed and placed in the police vehicle. (A true and correct copy of Trooper Davis' Bodycam Footage is attached hereto as **Exhibit "G", 21:43:31**). The New Jersey Standard Operating Procedure instructs officers to handcuff those suspected to be under the influence of drugs and alcohol. (A true and correct copy of Trooper Davis' Deposition Transcript is attached hereto as **Exhibit "F," 116:15-18**).

Trooper Davis read Plaintiff Bodhan Zelechiwsky his <u>Miranda</u> rights. (See a true and correct copy of Trooper Ashley Davis'

Deposition Transcript is attached hereto as **Exhibit "F," 116:24-25; 117:1**; see also a true and correct copy of Trooper Davis' Bodycam Footage, is attached hereto as **Exhibit "G, " 21:44-41**).

### III. Count II of Plaintiff's Complaint False Imprisonment, against Trooper Davis and John Doe, must be dismissed because Plaintiff was not falsely imprisoned.

**A. Plaintiff Bodhan did not experience false imprisonment when he was detained because Trooper Davis had probable cause to believe he operated his vehicle under the influence of alcohol.**

Under New Jersey law, the elements of false imprisonment are: "(1) an arrest or detention of the person against his or her will and (2) lack of proper legal authority or legal justification." Shelley v. Linden High Sch., No. 19-20907, 2020 U.S. Dist. LEXIS 203927, 2020 WL 6391191, at *4 (D.N.J. Nov. 2, 2020) (quoting Leang, 969 A.2d at 1117)). "The gist of false imprisonment is merely unlawful detention without more." Earl v. Winne, 14 N.J. 119, 101 A.2d 535, 539 (N.J. 1954) [quoting Lakutis v. Greenwood, 9 N.J. 101, 87 A.2d 23, 25 (N.J. 1952); 1 ADDISON ON TORTS (6th ed.)].

To succeed on false arrest and false imprisonment claims, a plaintiff must establish a lack of probable cause to arrest and imprison. Alburg v. Jones, 2023 U.S. App. LEXIS 8299 (3r Cir.) . "False arrest and false imprisonment claims will 'necessarily fail if probable cause existed for any one of the crimes charged against the arrestee.'" The District Court dismissed Edwards' false arrest

and false imprisonment claims because Edwards pled guilty to driving on a suspended license thus providing probable cause to arrest and imprison him. Edwards argues that his conviction for driving on a suspended license cannot establish probable cause for his arrest and imprisonment because it is a non-jailable summary offense that is only punishable by a $200 fine. If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." This holds true even if state law would prohibit arrest for such a minor offense. Id.

Here, Defendant maintains that while Driving While Under the Influence is civil summons, it is not a minor offense since it endangers other motorists. Since Trooper Davis made observations documented on her body worn camera that Plaintiff failed the field sobriety tests, probable cause existed for not only his arrest, but also transporting him to the barracks to perform a breath test.

In the matter before this Honorable Court, Plaintiff Bohdan Zelechiwsky was not falsely imprisoned because Trooper Davis had an obligation to take Zelechiwsky into custody when probable cause was developed that Plaintiff was impaired and operating under the influence of alcohol, legal, or illicit drugs. Therefore, Count II of plaintiff's Complaint should be dismissed as a matter of law.

61

**IV.** **Count III of Plaintiff's Complaint must be dismissed because Lisa Zelechiwsky was not subject to an unlawful search since Trooper Davis had reasonable suspicion to conduct the search.**

The searches of Plaintiffs' vehicle and Plaintiff Lisa Zelechiwsky belongings post-arrest were proper. Under both the United States and the New Jersey State Constitutions, warrantless searches are only permitted when "justified by one of the 'few specifically established and well-delineated exceptions' to the warrant requirement." State v. Witt, 126 A.3d 850, 857 (N.J. 2015) (quoting *State v. Frankel*, 847 A.2d 561 (N.J. 2004)). **One exception is the automobile exception**. State v. Witt, 126 A.3d 850, 857 (N.J. 2015) [citing Pennsylvania v. Labron, 518 U.S. 938, 940 (1996)]. (emphasis added). The automobile exception "authorizes a police officer to conduct a warrantless search of a motor vehicle if it is 'readily mobile' and the officer has 'probable cause' to believe that the vehicle contains contraband or evidence of an offense." State v. Witt, 126 A.3d 850, 857 (N.J. 2015) [citing Pennsylvania v. Labron, 518 U.S. 938, 940 (1996)]. "Probable cause is more than bare suspicion but less than legal evidence necessary to convict. It has been defined by this Court as a 'well-grounded suspicion' that a crime has been or is being committed." State v. Alston, 440 A.2d 1311, 1321 (N.J. 1981) (internal citations omitted).

**A.    Trooper Davis did not conduct an unlawful search under state law.**

"[T]he United States Supreme Court has concluded that 'carrying out an immediate search without a warrant' based on probable cause is 'reasonable' under the Fourth Amendment. We reach the same conclusion under Article I, Paragraph 7 of the New Jersey Constitution, subject to the caveats in *Alston*." *State v. Witt*, 126 A.3d 850, 872 (N.J. 2015). In *Alston*, the New Jersey Supreme Court held "that the automobile exception authorized the warrantless search of an automobile only when the police have probable cause to believe that the vehicle contains contraband or evidence of an offense and the circumstances giving rise to probable cause are unforeseeable and spontaneous." *State v. Witt*, 126 A.3d 850, 873 (N.J. 2015) (citing *State v. Alston*, 440 A.2d 1311 (N.J. 1981)). The unforeseeable or spontaneous circumstances must be in addition to the inherent mobility of a vehicle on a roadway. State v. Smart, 289 A.3d 469, 478 (N.J. 2023).

Determining whether circumstances were unforeseeable and spontaneous is a fact-specific inquiry. State v. Smart, 289 A.3d 469, 479 (N.J. 2023). In *Smart*, the New Jersey Supreme Court found that unforeseeable and spontaneous circumstances did not exist where the police surveilled the drug-dealing suspect for weeks prior to the vehicle search. State v. Smart, 289 A.3d 469, 479 (N.J. 2023).

Exigent circumstances do not dissipate when the vehicle occupants are removed from the car, arrested, or "otherwise restricted in their freedom of movement." *State v. Alston*, 440 A.2d 1311, 1323 (N.J. 1981) (internal citations omitted). Further:

> [T]he car is readily movable until such time as it is seized, removed from the scene, and securely impounded by the police. Until then it is potentially accessible to third persons who might move or damage it or remove or destroy evidence contained in it. Under *Chambers*, however, when there is probable cause to conduct an immediate search at the scene of the stop, the police are not required to delay the search by seizing and impounding the vehicle pending review of that probable cause determination by a magistrate.

State v. Alston, 440 A.2d 1311, 1323 (N.J. 1981).

This set of facts in the case at bar show the vehicle was readily mobile <u>and</u> that there was probable cause and therefore, the automobile exception applies.   This is because Plaintiffs were traveling in and operating a pick-up truck.   This is further supported by the fact that Plaintiff Bodhan Zelechiwky's performance on the field sobriety test, documented on the video footage, and based upon Trooper Davis' knowledge, training and experience showed that Plaintiff was not capable of safely operating a motor vehicle.   Trooper Davis conducted nothing more than a motor vehicle exception search of Plaintiffs' pick-up truck in accordance with the policies and procedures of the New Jersey State police consistent with Article 1, Section 8 of the New Jersey Constitution and Federal law.   Any notion to the contrary fails to

consider the broader standard applicable to a motor vehicle search and the spontaneous circumstances surrounding a motor vehicle search which is also are present here.

**V.    Count IV, Malicious Prosecution, against Trooper Davis, must be dismissed because Plaintiff has not presented sufficient evidence that Trooper Davis maliciously prosecuted Plaintiff.**

> **A. Plaintiff Bodhan Zelechiwsky was not falsely charged with Improper Right and Left Turns N.J.S.A. 39:4-123 since there was probable cause for the initial traffic stop based upon Trooper Davis' Observation of Plaintiff Bodhan Zelechiwsky.**

To prevail on a Fourth Amendment malicious prosecution claim under 42 U.S.C. § 1983, a plaintiff must establish the following: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequent of a legal proceeding. Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007).

Plaintiff Bodhan Zelechiwsky's claim for malicious prosecution contained in Count IV of his Complaint must fail as a matter of law since the initial stop, arrest, and detention pending the results of Plaintiff's breath test were lawful. While the result of Plaintiff's breath test was 0.0, the initial traffic stop for Improper Lane Change (improper Right or Left Turns) and

65

failure to activate Plaintiff's turn signal was based upon Trooper Davis' observations gave her probable cause to effectuate the subject traffic stop.

Unlike its federal counterpart, New Jersey law considers malicious prosecution a tort claim and not a constitutional claim. *See* LoBiondo v. Schwartz, 199 N.J. 62, 89-90 (2009) (malicious prosecution and its civil analog, malicious use of process, are of a "group of closely related torts"). *See also* Falat v. Cty. of Hunterdor, 2018 WL 3554139, *7 (App. Div. July 25, 2018) (affirming dismissal of the plaintiffs' New Jersey Civil Rights Act malicious prosecution claim because "malicious prosecution under New Jersey law has developed through case law, and it is not a constitutional claim as it is under federal law."). Case law also suggests that the New Jersey Civil Rights Act could not cover malicious prosecution because it is not a substantive due process violation. The New Jersey Civil Rights Act and 42 U.S.C. § 1983 are often analogous, but their scope differs here. While 42 U.S.C. § 1983 permits claims for both substantive and procedural due process claims, the NJCRA only permits substantive due process claims. Tumpson v. Farina, 218 N.J. 450, 477 (2014). To the extent malicious prosecution would be a constitutional claim, it falls under procedural due process, and therefore it cannot be asserted under the NJCRA. *See* Coles v. Carlini, 162 F. Supp. 3d 380, 403 (D.N.J. 2015) (quoting Jennings v. Shuman, 567 F.2d 1213, 1220 (3d

Cir. 1977) (malicious abuse of process, which is considered the civil analogue to malicious prosecution, "is by definition a denial of procedural due process").

Based on the foregoing, to the extent Plaintiffs bring any malicious prosecution claim against the Defendants, it cannot be advanced under the New Jersey Civil Rights Act, Therefore, to the extent the claim is advanced at all, it should be construed as a common law claim which is subject to dismissal as a matter of law.

## VI. Count V of plaintiff's complaint alleging failure to intervene must fail because plaintiff has failed to identify John Doe.

First, Plaintiffs have failed to amend their Complaint to name John Doe who they allege failed to intervene, notwithstanding that the identity of John Doe should be known and properly pled at this stage in the litigation.

Moreover, the necessary elements are not present here, assuming arguendo that this Honorable Court permits Plaintiffs to pursue their John Doe claim. A party bringing a failure-to-intervene claim must prove three factors: "(1) the officer had a duty to intervene; (2) the officer had the opportunity to intervene; and (3) the officer failed to intervene. The opportunity to intervene (factor two) must be "realistic and reasonable." Mitchell v. Hudson County, 2024 U.S. Dist. LEXIS 110491 (June 24, 2024). Consistent with all § 1983 claims, the plaintiff must show the state actor's personal involvement. See

67

Damiani v. Duffy, 754 F. App'x 142, 146 (3d Cir. 2018) [citing
Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)].

　　　Here, if Plaintiffs' Complaint is woefully deficient in that
there were no Constitutional violations which would precipitate
another law enforcement officer to intervene in the arrest and/or
detention of Plaintiff Bodhan Zelechiwsky.  Therefore, Plaintiffs'
failure to intervene allegation should be dismissed.

**VII. Count VI of plaintiff's complaint alleging violations of the
New Jersey Civil Rights Act must be dismissed as a matter of
law for the same reasons detailed above.**

　　　Title 42 U.S.C. § 1983 (hereinafter "Section 1983") does not
create substantive rights but "only remedies deprivations of
rights established elsewhere in the Constitution[]."Kneipp by
Cusack v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1966). Similarly,
the New Jersey Civil Rights Act (hereinafter "NJCRA") was enacted
in 2004 as an analogue to Section 1983 to provide New Jersey
citizens with state remedies without creating new substantive
rights. *See* Perez v. Zagami*, LLC*, 94 A.3d 869, 875 (N.J. 2014)
(citations omitted). *See also* Harz v. Borough of Spring Lake, 191
A.3d 547, 554 (N.J. 2018) (NJCRA provides remedy for violation of
substantive rights in New Jersey State Constitution). Therefore,
the NJCRA private cause of action correlates to the Section 1983
federal cause of action.[3] *See* Perez, 94 A.3d at 877. "The

---

[3] Section 10:6-2(c) of the New Jersey Civil Rights Act (hereinafter "NJCRA") is nearly identical
to Section 1983, with two distinct differences. First, the NJCRA "protects against the deprivation

interpretation given to parallel provisions of [Section 1983] may provide guidance in construing" the NJCRA. <u>Harris v. City of Newark</u>, 271 A.3d 1250, 1257 (N.J. 2022) (quoting Tumpson, 95 A.3d at 223). In fact, federal jurisprudence has been helpful to New Jersey state courts in formulating a standard for identifying a substantive right under the NJCRA. *See id.* As such, Plaintiff's claims under their protections will be addressed as one. *See* <u>Trafton v. City of Woodbury</u>, 799 F. Supp. 2d 417, 443 (D.N.J. 2011) [noting "[c]ourts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart" (citations omitted)].

**VIII. <u>DEFENDANT TROOPER DAVIS IS ENTITLED TO QUALIFIED IMMUNITY BECAUSE NO LAW CLEARLY ESTALBISHES THAT HER CONDUCT VIOLATED ANY OF PLAINTIFFS' CONSTITUTIONAL RIGHTS ARE IMMUNE FROM SUIT.</u>**

Defendant Trooper Davis is entitled to qualified immunity for each claim advanced under the United States and New Jersey Constitution because she is entitled to qualified immunity. because, as argued throughout this brief, there is no evidence of a constitutional violation. Therefore, Plaintiffs' claims should be dismissed as a matter of law.

---

of and interference with '*substantive* rights, privileges or immunities secured by the Constitution or laws of this State,'" while Section 1983 protects against "the deprivation of *any* rights." *Tumpson v. Farina*, 95 A.3d 210, 224 (N.J. 2014) (emphasis in original) (citations omitted). Second, as to the NJCRA, the New Jersey Supreme Court had to determine whether the legislature intended for Section 10:6-2(c) to provide remedies "in addition to those in previously enacted statutes or the common law." *Id.* In contrast, as to Section 1983, the United States Supreme Court had to determine whether the statute enacted after 1871 (the date of Section 1983's enactment) foreclosed Section 1983's available remedies. *See id.* (citations omitted).

Qualified immunity is a defense under both 42 U.S.C. § 1983 and the New Jersey Civil Rights Act. See Ramos v. Flowers, 56 A.Jd 869, 429 N.J. Super. 13, 24 (App. Div. 2012). "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." White v. Pauley, 137 S.Ct. 548, 551 (2017) [quoting Mullenix v. Luna, 577 U.S. 7, 11, (2015)]. "[F]or the right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate. Id. at 12. (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)). The standard for qualified immunity is tilted in favor of shielding government actors and '"gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law"' Zaloga v. Borough of Moosic, 841 F.3d 170 (3d Cir. 2016)(emphasis added). In Saucier v. Katz, the Supreme Court divided the analysis of qualified immunity into two parts: First, the court considering qualified immunity must ask whether the alleged facts, taken in the light most favorable to the injured party, show that the government official's conduct violated a constitutional right; second, the court must ask whether the right was clearly established in light of the specific context of the case and not as a broad general proposition. 533 U.S. 194 (2001).

The qualified immunity doctrine is analyzed the same under both state and federal law. Morillo v. Torres, 117 A.3d 1206, 222 N.J. 104, 116 (N.J. 2015); Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 443-444 (D.N.J. 2011). Qualified immunity is an "immunity from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526-27 (1985); see also Radiation Data, Inc. v. N.J. Dep't. of Envtl. Prot., 607 A.2d 988, 456 N.J. Super. 550, 560 (N.J. App. Div. 2018) (quoting Brown v. State, 230 N.J. 84, 98 (N.J. 2017). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "[Q]ualified immunity is an objective question to be decided by the court as a matter of law." Curley v. Klem, 499 F.3d 199, 210 (3d Cir. 2007).

In applying qualified immunity to arrests, "the Supreme Court has recognized that it is inevitable that law enforcement officers will in some cases reasonably but mistakenly conclude that probable cause to make an arrest is present" and "has made clear that in such cases those officers, like other officials who act in ways they reasonably believe to be lawful, will not be held personally liable." Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995) (citing Anderson v. Creighton, 483 U.S. 635, 641 (1987)) This is necessary because "law enforcement officials should not

71

have to fear facing a ruinous civil lawsuit and substantial financial loss when acting reasonably in difficult circumstances and on uncertain legal terrain." Morillo v. Torres, 117 A.3d 1206, 222 N.J. 104, 125 (2015). See also Pearson, 555 U.S. at 231 (qualified immunity advances a policy of "shield[ing] officials from harassment, distraction, and liability when they perform their duties reasonably").

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson, 555 U.S. at 231. Two questions must be answered in the affirmative before this protection is pierced: 1) is the officer alleged to have violated a constitutional right; and 2) was the right alleged to have been violated so clearly established that it would have been clear to a reasonable officer that his actions violated the law. Id., 232.

These questions may be analyzed in either order. Id., 242.

Here, Plaintiff cannot fulfill the second prong of this inquiry by showing that Trooper Davis' actions violated clearly established law. "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that wat he is doing is unlawful." District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018). When analyzing whether the government official's conduct

72

violated a "clearly established right," the "inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (citing Saucier v. Katz, 533 U.S. 194, 206 (2001)).

The Supreme Court has repeatedly reiterated "the longstanding principle that 'clearly established law' should not be defined "at a high level of generality," " White v. Pauly, 137 S. Ct. 548, 552 (2017) (quoting Al-Kidd, 563 U.S. at 742), "since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." Plumhoff v. Rickard, 572 U.S. 765, 773 (2014) "The general proposition, for example, that [an unreasonable seizure] violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." Al-Kidd, 563 U.S. at 742. Instead, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." Mamrnaro v. N.J. Div. of Child Protection & Permanency, 814 F.3d 164, 169 (3d Cir. 2016); see also Mullenix, 577 U.S. 7, 18 (2015) (rejecting reliance on cases "too factually distinct to speak clearly to the specific circumstances" confronting official). Courts are to examine the legal precedent as it existed at the time the conduct allegedly occurred and determine whether it would place every reasonable

official on notice that his specific conduct violated the law. See Al-Kidd, 563 U.S. at 741.

"[C]learly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a 'robust consensus of cases of persuasive authority in the Courts of Appeals.'" Bland v. City of Newark, 900 F.3d 77, 84 (3d Cir. 2018) (citation omitted). If there are no cases of controlling authority in the jurisdiction in question, and if other appellate federal courts have split on the question of whether an asserted right exists, the right cannot be clearly established for qualified immunity purposes. Wilson v. Layne, 526 U.S. 603, 618 (1999).

For the reasons discussed throughout this brief, the Court should find that Trooper Davis' conduct did not violate any of the Plaintiffs' constitutional rights. Thus, the first part of the qualified immunity analysis precludes any award of damages against the Defendants. But, even if the Court found that Trooper Davis' conduct was a constitutional violation, the Court should find that qualified immunity applies because it was not clearly established that his conduct violated any constitutional right.

Qualified immunity applies to Counts I, II, III, IV, V, VI and VII which are brought under the United States or State Constitutions. For each of these claims, Plaintiffs cannot identify any case law that clearly establishes Trooper Davis violated their constitutional rights. To the contrary, precedent

74

shows that probable cause supported Plaintiff's Bodhan Zelechiwsky's arrest. See supra. And moreover, affirmative findings of probable cause had been made. See supra. Plaintiffs cannot identify any law that clearly establishes that the evidence provided to Trooper Davis did not establish probable cause for Plaintiff Bodhan Zelechiwsky's arrest.

Plaintiff cannot demonstrate any law clearly establishing there was no probable cause to stop him, and conduct field sobriety tests because of the observations of Trooper Davis that she made of changing lanes and even crossing three lanes without activating a turn signal. The Third Circuit has repeatedly stressed that the probable cause inquiry focuses on "the facts and circumstances within the arresting officer's knowledge." Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995).

Therefore, the later-acquired evidence that exonerated Plaintiff had no bearing on the earlier probable cause.

Qualified immunity can be asserted against actions brought under the NJCRA or Section 1983. Harris v. City of Newark, 271 A.3d 1250, 1254 (N.J. 2022). State actors, such as corrections, are entitled to a defense of qualified immunity on excessive force claims, "shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). "In other words, the doctrine

75

of qualified immunity provides that officers may be shielded from liability in a civil rights suit if their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Epifan v. Roman, 2014 U.S. Dist. LEXIS 137687, at *27 (D.N.J. Sept. 29, 2014) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The "right allegedly violated must be established, 'not as a broad general proposition,' but in a 'particularized sense so that the 'contours' of the right are clear." Reichle v. Howards, 566 U.S. 658, 665 (2012). Anything less would allow individuals to "convert the rule of qualified immunity" into "a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights," thereby "making it impossible for officials to anticipate when their conduct may give rise to liability for damages." Anderson, 483 U.S. at 641. This protection exists "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Epifan, 2014 Dist. LEXIS, at *27 (citing Pearson v. Callahan, 555 U.S. 223 (2009) (citation omitted)).

To be "clearly established," a right must have been placed beyond constitutional question debate. Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). Qualified immunity is unavailable only when "cases of controlling authority [] at the time of the incident" or "a robust consensus of cases of persuasive authority" demonstrate

that the conduct committed clearly violated an individual's rights such "that a reasonable officer could not have believed that his actions were lawful." *Id.* at 742. *See also District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018).

Under this "exacting standard," courts must first "apply applicable Supreme Court precedent." Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 169 (3d Cir. 2016) (citing *Taylor v. Barkes*, 575 U.S. 822, 826 (2015)). If none exists, courts then look for "controlling authority in our jurisdiction" (i.e., a precedential Third Circuit opinion) or a "robust consensus of cases of persuasive authority in the [other] Courts of Appeals that could clearly establish a right." Mammaro, 814 F.3d at 169. If no authority "squarely governs" the conduct at issue, the officer is immune from liability and suit. Brosseau v. Haugen, 542 U.S. 194, 201 (2004).

### A. **Defendant Trooper Davis is immune to common law tort claims because she acted in good faith.**

Under the NJTCA, an employee is immune from liability if under either an objective or a subjective analysis that the acts performed were in good faith in the execution or enforcement of any law. N.J.S.A. 59:3-3; Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 582 (N.J. 2009) (citing Canico v. Hurtado, 144 N.J. 361, 365 (N.J. 1996)). This section effectively provides qualified immunity with respect to the enforcement of the law. N.E. for J.V.

77

v. State Dep't of Child. & Fams., Div. of Youth & Fam. Servs., 449 N.J. Super. 379, 404 (App. Div. 2017).

The qualified immunity under N.J.S.A. 59:3-3 has two components. Ibid. Public employees are entitled to immunity if they can establish either that their conduct was "objectively reasonable," or that they acted with subjective good faith. Ibid. (citing Fielder v. Stonack, 141 N.J. 101, 131-32 (1995) "In determining whether an employee has established qualified immunity under N.J.S.A. 59:3-3, the court applies the same standards of objective reasonableness that are used in federal civil rights cases." Ibid. A public employee acts with objective reasonableness "if the actor's conduct did not violate a clearly established constitutional or statutory right." Id. at 405 (App. Div. 2017) (citing Gormley v. Wood-El, 218 N.J. 72, 113 (2014). "Negligence is insufficient to defeat the immunity provided by [N.J.S.A.] 59:3-3." Nicini v. Morra, 212 F. 3d 798, 815 (3d Cir. 2000); Canico v. Hurtado, 144 N.J. 361, 366 (1996).

Here, the record demonstrates that Trooper Davis' acts were both objectively and subjectively reasonable. Trooper Davis' investigation and involvement in Plaintiff's arrest were taken in the good faith enforcement of criminal law - specifically, she gathered evidence by making observatiosn of Plaintiff's driving, made a traffic stop, made observations of Plaintiff's demeanor,

asked him to get out of the car to make sure he was okay to drive and then performed field sobriety tests.

Because the record does not show any unreasonable actions taken by Trooper Davis, either objectively or subjectively, she is entitled to qualified immunity.

Based on the foregoing, the Court find that Trooper Davis is immune to Plaintiffs' claims advanced under state tort law under N.J.S.A. 59:3-3, and grant Judgment in his favor on each of those claims.

## IX.    PLAINTIFF'S CLAIMS FOR PUNITIVE AND COMPENSATORY DAMAGES MUST BE DISMISSED.

Plaintiffs' Complaint seeks punitive and compensatory damages. Because Plaintiffs have failed to support these claims without supporting facts, the court should dismiss Plaintiffs' prayer for relief.

First, Defendants are entitled to summary judgment on each of Plaintiff's claims to the extent they seek punitive damages. Punitive damages may be imposed against defendants in their individual capacities under 42 U.S.C. § 1983 in cases where the Defendant has been found to have acted with "evil motive or intent." Smith v. Wade, 461 U.S. 30, 56 (1983). Under state law, the Punitive Damages Act ("PDA") requires plaintiffs prove "by clear and convincing evidence the harm suffered was the result of the defendant's acts or omissions, [which] were actuated by actual

malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J.S.A. 2A:15-5.12(a). "Wanton and willful disregard means a deliberate . . . omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such. . . . omission." N.J.S.A . 2A:15-5.10.

In the case at bar, Plaintiffs have failed to show that Defendant Trooper Davis acted with evil motive or intent. Plaintiffs have not adduced any evidence that the Defendant disliked them.  They have not adduced any competent evidence the Defendant sought to deprive them of their rights or violated the law, or that they considered the restrictions to be constitutional violations. Therefore, to the extent the Court permits any of Plaintiffs' claims to proceed, the Court should dismiss Plaintiffs' claims seeking punitive damages because they have not produced any evidence the Defendants acted with an evil motive.

Pursuant to the New Jersey Tort Claims Act, Plaintiff's claims for non-economic damages should be dismissed with prejudice pursuant to N.J.S.A. 59:9-2(d), as plaintiff has failed to pierce the requisite threshold.

The tort liability of public entities in the State of New Jersey is controlled by the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. 59:1-1, et seq. Generally, the NJTCA reflects the considered legislative response to the judicial abrogation of the

traditional doctrine of sovereign immunity in Willis v. Dep't of Conservation & Econ. Dev., 55 N.J. 534, 540-41 (1970). The NJTCA follows the basic approach of providing immunity for public entities unless liability is expressly allowed. See N.J.S.A. 59:2-1(a).

The immunity provided by the NJTCA is all inclusive except as otherwise provided by the Act. Fair v. County of Bergen, 151 N.J. Super. 520, 522-23 (App. Div. 1977). Consistent with this approach, claims against public entities for pain and suffering damages are barred subject to a narrow exception. See N.J.S.A. 59:9-2(d). The recovery of damages against a public entity is limited to injuries that meet the 'threshold' requirements of N.J.S.A. 59:9-2(d):

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical expenses are in excess of $3,600.00.

The limitation reflects the Legislature's policy judgment that, in view of the economic burdens facing public entities, non-objective damages are available only in "aggravated circumstances--cases involving a permanent loss of a bodily function, permanent disfigurement or dismemberment" where the medical expenses exceed a minimum dollar amount. See 1972 Task Force Comment to N.J.S.A.

59:9-2(d).[4] The Legislature sought to "preclude recovery for pain and suffering based on subjective evidence or minor incidents." Collins v. Union County Jail, 150 N.J. 407, 413 (1997). The NJTCA threshold has also been compared to the verbal threshold under the Automobile Reparation Reform Act threshold, N.J.S.A. 39:6A-8a. See Randall v. State, 277 N.J. Super. 192, 197 (App. Div. 1994).

Since the decision in Brooks v. Odom, 150 N.J. 395 (1997), the Supreme Court consistently has applied a two-part test to determine whether there has been a permanent loss of bodily function. To recover pain and suffering damages against a public entity a plaintiff must show: (1) a permanent injury demonstrated by objective medical evidence; and (2) a permanent loss or limitation of a bodily function that is substantial. Ibid.; Ponte v. Overeem, 171 N.J. 46 (2002); Kahrar v. Borough of Wallington, 171 N.J. 3, 12 (2002); Gilhooley v. County of Union, 164 N.J. 533 (2000).

Subjective complaints alone are not enough to establish permanent loss of a bodily function. See Brooks, 150 N.J. at 403. Injuries proven entirely by subjective complaints of pain would amount to nothing more than pain and suffering damages. Ibid. The ban on pain and suffering is "intended to apply to the intangible,

---

[4] Rochinsky v. State of N.J., Dep't of Transp., 110 N.J. 399, 407 n.4 (1988) ("The Comments following certain sections of the statute were taken from the Report of the Attorney General's Task Force on Sovereign Immunity -- 1972, and accompanied the Act during its consideration by the Legislature. They have the precedential weight and value of legislative history.").

subjective feelings of discomfort that are associated with personal injuries." Ayers v. Township of Jackson, 106 N.J. 557, 571 (1987). Without objective proof, a claim of permanent injury that is demonstrated by the "impairment of plaintiff's health and ability to participate in activities" merely iterates a disguised claim for pain and suffering. Brooks, 150 N.J. at 403 (citations omitted); Thorpe v. Cohen, 258 N.J. Super. 523, 530-31 (App. Div. 1992). In Knowles v. Mantua Twp. Soccer Ass'n, 176 N.J. 324, 332 (2003), the Court stated that "there must be a physical manifestation of a claim that an injury is...permanent and substantial." The loss does not have to be a total loss, but it has to be more than a mere limitation of a bodily function. Bischer v. City of Cape May, 2011 N.J. Super. Unpub. LEXIS 632.

The determination whether a plaintiff's injury satisfies the permanent loss of a bodily function that is substantial threshold under the NJTCA is a fact-sensitive analysis. Knowles, 176 N.J. at 331 (citing Gilhooley, 164 N.J. at 541). In this analysis, the focus should be on the "nature or degree of the ongoing impairment that determines whether a specific injury meets the threshold requirement under the Tort Claims Act." Id. (quoting Ponte, 171 N.J. at 53). Comparison to past precedents is useful in determining whether injuries are minor or substantial. Ibid. This analysis determines whether the "plaintiff's injuries place him on that part of the 'continuum

of cases' in which this Court has determined that an injury is substantial and permanent." Id. (citing Gilhooley, 164 N.J. at 541).

Here, Plaintiffs have not shown that they have sustained any injuries whatsoever for which either of them treated.  As for any so-called economic damages being claimed, they have not been able to quantify same.

Plaintiff Bodhan Zelechiwsky has not sought treatment for physical or psychological injuries he claims to have suffered due to the incident. (A true and correct copy of Plaintiff Bodhan Zelechiwsky's Deposition Transcript is attached hereto as **Exhibit "C," 29:21-25; 30:1-15**; see also a true and correct copy of Plaintiff Lisa Zelechiwsky's Deposition Transcript is attached hereto as **Exhibit "E," 68:7-10**).  Plaintiff Lisa Zelechiwsky did not seek professional psychiatric treatment for psychological injuries she claims to have suffered due to the incident. (A true and correct copy of Plaintiff Lisa Zelechiwsky's Deposition Transcript is attached hereto as **Exhibit "E," 13:12-16; 14:2-10**). Plaintiff Lisa Zelechiwsky was unable to articulate her need to take Xanax for psychological injuries caused by the incident. (A true and correct copy of Plaintiff Lisa Zelechiwsky's Deposition Transcript is attached hereto as **Exhibit "E," 13:4-11**).

84

Plaintiffs still socialize and enjoy life together after the incident. (A true and correct copy of Plaintiff Lisa Zelechiwsky's Deposition Transcript is attached hereto as **Exhibit "E," 77:15-21**).

Plaintiff Bodhan Zelechiwsky has not treated with his primary care physician for psychological injuries he claims to have suffered as a result of the incident. (A true and correct copy of Plaintiff Bodhan Zelechiwsky's Deposition Transcript is attached hereto as **Exhibit "C," 35:1-8**).

Plaintiff Bodhan Zelechiwsky cannot quantify his claimed injuries to his reputation as a result of the incident. (A true and correct copy of Plaintiff Bodhan Zelechiwsky's Deposition Transcript is attached hereto as **Exhibit "C," 47:5-25; 48:1-7**).

Plaintiffs maintain that Plaintiff Bodhan Zelechiwsky's wages decreased after the incident. (A true and correct copy of Plaintiff Lisa Zelechiwsky's Deposition Transcript is attached hereto as **Exhibit "C," 37:2-11**). However, Plaintiff Lisa Zelechiwsky acknowledged that the decline in wages could have been due to the COVID pandemic. (A true and correct copy of Plaintiff Lisa Zelechiwsky's Deposition Transcript is attached hereto as **Exhibit "C," 37:2-11**).

Plaintiff Bodhan Zelechiwsky likely would not have filed suit if Trooper Davis apologized to him and his wife, Plaintiff Lisa Zelechiwsky. (A true and correct copy of Plaintiff Bodhan

85

Zelechiwsky's Deposition Transcript is attached hereto as **Exhibit "C," 49:7-14**).

Plaintiff Lisa Zelechiwsky testified that her husband is a man and was taken away by a female police officer, handcuffed and that it affected his ego. And that it made him a little more "edgy." (A true and correct copy of Plaintiff Lisa Zelechiwsky's Deposition Transcript is attached hereto as **Exhibit "E," 70:1-7**).

<u>**CONCLUSION**</u>

In light of the foregoing, Defendant's Motion for Summary Judgment should be granted, and all claims against Defendant Trooper Davis should be dismissed with prejudice.

Respectfully submitted,

**KENT/McBRIDE, P.C.**

By: _Diana R. Brocco_
Diana R. Brocco, Esquire
ATTORNEY ID. NO. 020261996
1040 KINGS HIGHWAY NORTH
SUITE 600
CHERRY HILL, NJ 08034
856-667-3113 - Phone
856-667-4003 - Fax
ATTORNEY FOR DEFENDANT:
Trooper Ashley Davis

Dated: September 13, 2024