Exhibit "P"

Thomas Sexton
635 Hamilton Road
Wenonah, NJ 08090

July 1, 2024

   Re: <u>Zelechiwsky, et al. v. Trooper Ashley Davis, et al.</u>
     No. 22-4994

Dear Mr. Karoly:

  At your request, I have reviewed materials regarding the motor vehicle stop conducted by Trooper Ashley Davis of the Zelechiwsky vehicle, operated by Mr. Zelechiwsky (with his wife occupying the front passenger seat) on August 10, 2020, at approximately 9:39 p.m., near the 24 mile marker on Route 55 in New Jersey, from the perspective of an experienced former New Jersey police officer of 14 years.

  The most significant information provided is gleaned from Trooper Davis' body camera. Unfortunately, the MVR recording which Trooper Davis has claimed to have viewed before giving her sworn deposition in this case, and which would either corroborate or refute Trooper Davis' allegation of Mr. Zelechiwsky's claimed, weaving in and out of his lane of travel and turning into the right lane without the use of his turn signal, has not been turned over to the Plaintiffs and, consequently, I have not reviewed this significant piece of evidence. I also reserve the right to modify my opinion, in accordance with that evidence, should it later be produced.

  Nonetheless, the body camera video review which I conducted, based upon my years of training and education, and my experience performing literally hundreds of traffic stops personally, provide more than a sufficient basis to opine, based upon a reasonable degree of professional certainty, that: 1) her stop of the vehicle was inconsistent with standard police training in that it was not made based upon a reasonable and articulable suspicion that Mr. Zelechiwsky had violated the law; 2) her field sobriety tests did not reveal results which, based

1

upon law enforcement training, objectively presented probable cause for Mr. Zelechiwsky's arrest which she in fact clearly effected; and 3) that her training made it clear that she could not conduct a warrantless search of the Zelechiwsky vehicle or Mrs. Zelechiwsky's purse.

My analysis causes me to conclude that while the traffic stop largely mimicked the general check list for vehicle stops, the most important element essential of DWI arrest was simply not indicated by the driver's actions on the videos. There were no indicators of impairment or alcohol use by the driver.

The body camera video shows that:

1. Mr. Zelechiwsky's response to the Trooper's light activation was immediate, safe, well-executed and not at all indicative of someone's driving ability being impaired in any way. (p. 93).

2. The driver fully follows the directions of the trooper and is complaint and never belligerent or confrontational.

3. The driver's oral responses are intelligent, understandable and appropriate throughout.

4. The driver's performance of his instructed field sobriety tests showed no evidence of intoxication and any minor deviations to be expected, given his age, the lack of ambient lighting in the area, the location where the tests were performed and, in an environment where cars were whisking by at high speed.

5. Whether a driver is impaired in any way is often clear from his movements quite apart from formalized balance testing (i.e. field sobriety tests). The degree to which a driver requires assistance in exiting his vehicle and/or entering the Trooper's vehicle, is highly indicative of whether the driver is

2

under the influence. Here, the driver exits his vehicle with ease and required no assistance by the Trooper. Further, Mr. Zelechiwsky exhibits no signs of impairment while standing by his vehicle and conversing with the Trooper. Even more conclusive of Mr. Zelechiwsky's lack of impairment is the ease with which he, while handcuffed behind his back, enters the rear of the Trooper's vehicle, without any assistance at all (even though she claims to have "placed him" in the rear of the vehicle). In my experience, a completely sober and much younger person could not normally perform as well and, more than one such person has hit his head entering the rear seat – especially if he were as tall as Mr. Zelechiwsky appears to be.

It appears to me that the Trooper proceeded with a DWI arrest based on a decision she made in her patrol vehicle prior to the traffic stop in as much as nothing she observed would lead a reasonable officer to proceed with DWI field sobriety testing. And, as stated, Mr. Zelechiwsky's field test performance was as good as could be expected of an aged person, staring into his headlights and the Trooper's flashlight, on a shoulder surface pitched toward the grass. Never once did the Trooper say that she smelled the odor of an alcoholic beverage on Mr. Zelechiwsky's breath or about his person (nor could she smell alcohol as we know the Alcotest results are 0.0), or mention anything other than glassy or watery eyes allegedly captured when she shined the flashlight into his glasses, and a purported slowness which she puzzlingly claimed could not be affected by age (and which the video clearly contradicts.

It is quite clear that the Trooper was aware that her actions were being recorded, because she did attempt to check all the boxes for the video. However, it still remains that she was

3

lacking a legitimate "accused", substituting instead Mr. Zelechiwsky, whose only offense appeared to be, being an elderly out-of-state operator who had difficulty standing on one leg.

The Trooper arrested Mr. Zelechiwsky without a warrant issued by a judge, contrary to standard training, which requires "probable cause plus" under New Jersey law. That is to say that not only must members of New Jersey law enforcement have objective reason to believe that a motor vehicle is being operated in violation of the law, and not only must they have that the operator has committed or is committing a crime at the time of the stop to avoid getting an arrest warrant from a neutral magistrate but, under the special protections of the New Jersey Constitution, a member of New Jersey Law Enforcement must show the additional proof that there are reasons giving rise to probable cause that were objectively unforeseeable and spontaneous (*State of New Jersey v. Witt*) before they can conduct a warrantless search of vehicle.

Significantly, here the Trooper had none of the arrest or search legal prerequisites we are trained in and, after the arrest, she appears to claim to have "un-arrested" Mr. Zelechiwsky because his Alcotest showed a BAC result of 0.00.

While there are numerous other inconsistencies and serious deviations from especially New Jersey law enforcement training committed by Trooper Davis, it is my opinion to a reasonable degree of professional certainty that those cited above are more than sufficient to justify the allegations appearing in the subject civil rights Complaint.

I reserve the right to modify or supplement this report if additional information is made available.

Respectfully submitted,

4

Thomas Sexton

*[signature]*

## THOMAS SEXTON
## RULE 26(a)(2)(B) EXPERT DISCLOSURES

(i) See my Report.

(ii) See my Report.

(iii) I do not presently plan to utilize any exhibits to summarize or support my opinions except those which have been exchanged between the parties, including videos concerning the incident giving rise to the claims made.

(iv) My CV is attached hereto, and contains the name of any publication authored by me in the last ten years. None

(v) During the previous 4 years I have testified as an expert at trial or by deposition in the following cases: None

(vi) My standard expert fees to be charged in the within case are as follows:

Case review and report preparation - $300.00 per hour

Deposition appearance fee - $2,500.00 plus travel

Trial appearance fee - $2,500.00 per day plus travel and per diem

Date: 7-3-24

Thomas Sexton

# CURRICULUM VITAE

Thomas M. Sexton

Traffic Crash Investigation/Reconstructionist

## Education and Training:

Saint Edmonds Private School, Philadelphia, Pennsylvania

Saint John Neumann High School, Philadelphia, Pennsylvania

Temple University, Philadelphia, Pennsylvania

United States Marine Corps Recruit Depot, Parris Island, South Carolina

Rowan University of Gloucester County, Sewell, New Jersey

**Basic Course for Police Officers,** Gloucester County Police Academy, Sewell, New Jersey, December 22, 1995

**Police Supervision,** Gloucester County Police Academy, April 28, 2006

**Accident Investigation 1,** Northwest University Traffic Institute, GCPA, 1997

**Accident Investigation 2,** Northwest University Traffic Institute, GCPA, 1997

**Vehicle Dynamics,** Northwest University Traffic Institute, GCPA, November 21, 1997

**Breathalyzer, Chemical Breath Analyses,** State of New Jersey Department of Law and Public Safety, June, 6, 1997

**Accident Investigation Update,** Gloucester County Police Academy, April 12-14, 1999

**Heavy Truck Enforcement,** Gloucester County Police Academy, February 15, 2000

**Accident Investigation Refresher,** Gloucester County Police Academy, April 11-13, 2000

**Traffic Accident Reconstruction 1,** Northwestern University Center for Public Safety, December 4-15, 2000

**Accident Investigation Refresher,** Gloucester County Police Academy, May 1-2, 2001

**Driving while intoxicated/standardized Field Sobriety Testing**
New Jersey State Police, Gloucester County Police Academy, June 22, 2001

**Motorcycle Crash Investigation,** University of North Florida, Institute of Police Technology and Management, Cape May County Police Academy, June 10-14, 2002

**Alcotest 7110 MKIII-C Operation,** New Jersey State Police, Department of Law and Public Safety, June 6, 2005

**Interview/Interrogation Techniques for the Traffic Crash Investigator,** University of North Florida, Institute of Police Technology and Management, Gloucester County Police Academy, July 11-15, 2005

**Radar Instructors Course,** Gloucester County Police Academy, May 5, 2002

**Radar Operator,** Deptford Township Police Department, 1996

**Criminal Procedure and Review,** Gloucester County Police Academy, March 2006

**Laws of Arrest, Search and Seizure,** Gloucester County Police Academy, March 2006

**Other Training:**

**United States Marine Corps,** Parris Island, South Carolina, Recruit Training.

**Naval Aviation Maintenance Administration Course,** Naval Air Station Meridian, MS July 1987

**Naval Aviation Supply Management,** Marine Corps Air Station Tustin, California July 1989

**Street Survival,** Gloucester County Police Academy

**Narcotics for the Patrol Officer,** Gloucester County Police Academy, 1997

**Criminal Patrol Drug Enforcement,** Gloucester County Police Academy.

**Insurance Fraud,** Gloucester County Prosecutors Office, September 14, 2000

**Blood borne Pathogens,** Gloucester County Department of Health November 28, 1995

**Cell Block Management,** State of New Jersey, Department of Corrections March 20, 1997

**Suicide Awareness,** State of New Jersey, Department of Corrections, March 20, 1997

**National Incident Management System,** Emergency Management Institute, Department of Homeland Security, FEMA, January 9, 2006

## Experience:

14 years of investigative experience with the Deptford Township Police Department assigned to the Patrol Division in December of 1995. Assigned to the Traffic Unit within the Patrol Division in 1997. Was assigned to Special Operations for 2 years, then reassigned to the Traffic Unit within the Patrol Division. Remained with Traffic Unit for rest of my career within the Patrol Division. While in Patrol Division was assigned as Officer in Charge of a squad, performing Supervisory duties for 700 hours a year as well as Traffic Unit duties. Responsible for approving all investigative reports as well as reviewing all NJTR-1 Crash Reports by all patrol officers. On "Call" 24/7 for fatal crashes or crashes with serious bodily injury.

Investigated more than 500 traffic crashes. Assisted other patrol officers with hundreds more crash investigations. Assisted other agencies with serious crashes if needed.

I have made more than 100 Driving While intoxicated arrests or assisted other Officers at scene and during investigation. I have issued thousands of Motor Vehicle summons during my career and made many serious arrests of violent offenders from motor vehicle investigations.

Provided leadership principals to all police officers. Trained officers to use the New Jersey Motor Vehicle Code, Title 39 and the investigators responsibility for its application in relationship to motor vehicle crashes.

Performed all types of investigations as a qualified New Jersey Police officer from Homicide, robbery to shoplifting.

## Court Testimony in Traffic Safety and Crash Reconstruction:

1. Gloucester County Superior Court. Granted "Expert" status as Crash Reconstructionist
2. Deptford Township Municipal Court

## Employment:

1986-1994, United States Marine Corps, Aviation Maintenance, MOS 6046/3072. Worked in Combat Helicopter Squadron, HMLA-367. Attained the rank of Sergeant and deployed to almost every continent. Desert Shield/Storm Combat Veteran.

1994-1995, Amtrak, Train Director, Train movement specialist.

1995-2008, Patrolman, Deptford Township Police Department. Retired, purchased military time.

2008-2018, Amtrak, Rail Traffic Controller. Retired.

## Professional Organizations & Certifications:

Policeman's Benevolent Association

Gloucester County, New Jersey

Fraternal Order of Police, Deptford Township, New Jersey

Marine Corps League, Assistant Commandant,

344 Harvey Ave, Wenonah, New Jersey, 08090

Veterans of Foreign Wars, Mantua, New Jersey 08051

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN DIVISION

| | |
|---|---|
| BOHDAN J. ZELECHIWSKY, et al. | : |
| | : CIVIL ACTION |
| Plaintiffs, | : |
| | : |
| vs. | : |
| | : No. 1:22cv-04994-CPO-AMD |
| TROOPER ASHLEY DAVIS, et al. | : |
| | : |
| Defendants. | : |

## AFFIDAVIT AND DECLARATION OF EXPERT

Pursuant to Fed.R.Civ.P. 56 (c)(4), the undersigned does hereby declare and say under penalty of perjury that:

1. I am the author of the attached expert report now being used by the Plaintiffs to oppose summary judgment in the above-captioned action.

2. I have set out acts in my report which are personally known to me by way of my review of the materials identified in said report, and which items are customarily relied upon by experts in my field of police practices, standards and procedures.

3. The aforesaid facts, or at least as much of those facts as are reasonably necessary to support the opinions I have rendered to a reasonable degree of professional certainty, would, in my opinion, be admissible into evidence in the within matter.

4. And, that based upon my specialized knowledge, training and experience, I am competent to testify on the matters stated, within said report, as further evidenced by my curriculum vitae which is appended to my said report. Further, the undersigned Affiant / Declarant saith not.

WITNESS MY HANDS AND SEAL this 10th day of October, 2024

By: *Thomas M Sexton*
Thomas Sexton

N.B. Expert Report and Curriculum Vitae attached hereto on the same date last above written.